# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

YELLOW PAGES PHOTOS, INC.,

    Plaintiff,

v.                                               Case No: 8:18-cv-1872-T-36AEP

DEX MEDIA, INC., YP LLC and YP
INTELLECTUAL PROPERTY LLC,

    Defendants.

_____/

## **ORDER**

This cause comes before the Court upon Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 42), Plaintiff's response in opposition (Doc. 51), and Defendants' reply in support of the Motion (Doc. 56). In the Motion, Defendants argue that Plaintiff's Amended Complaint (1) fails to state a claim for Digital Millennium Copyright Act violations, (2) involves improper claim splitting, and (3) is barred by claim preclusion and collateral estoppel. The Court, having considered the parties' submissions and being fully advised in the premises, will grant Defendants' Motion to Dismiss in part.

### I.    STATEMENT OF FACTS[1]

This civil action alleges violations of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202(a), by Dex Media, Inc. ("Dex Media"), YP LLC ("YP"), and YP Intellectual Property LLC ("YP IP") (collectively, "Defendants"). Doc. 29 at ¶ 1. Since at least August 2015, Defendants knowingly distributed copyright management information that is false with the intent

---

[1] The following statement of facts is derived from Plaintiff's Amended Complaint (Doc. 29), the allegations of which the Court must accept as true in ruling on the instant Motion to Dismiss. *See Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983).

to conceal their infringement of Plaintiff Yellow Pages Photos, Inc.'s ("YPPI") federally registered copyrights in its photographic images. *Id.*

Since November 3, 2006, YPPI has been the owner, by assignment, of thousands of copyrighted stock photographic images (the "YPPI Images") for use in creating, producing, and publishing advertisements, specifically including those used in telephone directories. *Id.* at ¶ 14. In early 2007, YPPI began registering copyrights in those images. *Id.* at ¶ 15.

**Dex Media**

On May 30, 2013, YPPI sued SuperMedia LLC ("SuperMedia"), an entity that Dex Media has argued is its predecessor in interest, for copyright infringement (the "SuperMedia Administrative Expense Case"). *Id.* at ¶ 22. In the SuperMedia Administrative Expense Case, which was heard in the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court"), YPPI alleged that SuperMedia was infringing YPPI's copyrights covering many of the same YPPI Images at issue in this case. *Id.* On January 12, 2015, also in the Delaware Bankruptcy Court, YPPI filed an adversary proceeding asserting that SuperMedia infringed, pre-petition, YPPI's copyrights covering many of the YPPI Images (the "SuperMedia Adversary Proceeding," and, together with the SuperMedia Administrative Expense Case, the "SuperMedia Litigation"). *Id.* at ¶ 24. On April 6, 2016, in the SuperMedia Adversary Proceeding, the Delaware Bankruptcy Court found that SuperMedia infringed YPPI's copyrights in many of the YPPI Images at issue here and that SuperMedia breached the YPPI license that SuperMedia claimed authorized its use of those YPPI Images. *Id.* at ¶ 26.

This case concerns Dex Media's distribution of print and web-based telephone directories that include the YPPI Images and which falsely claim that Dex Media is the sole copyright owner. *Id.* at ¶ 30. From August through December 2015, Dex Media distributed hundreds of print and

web-based telephone directories containing YPPI Images where each such directory is marked with a copyright notice stating, "© 2015 Dex Media. All rights reserved." *Id.* at ¶ 33. Dex Media did the same during the years 2016, 2017, and 2018, changing only the year on the copyright notices. *Id.* at ¶¶ 37, 41, 45.

Examples of Dex Media's DMCA-violating uses are attached to the Amended Complaint as exhibits B-E. *Id.* at ¶¶ 36-48. Those examples generally show (1) the cover of a Dex Media directory containing a Dex Media copyright notice and (2) pages of Dex Media advertisements within the directory containing YPPI Images. *E.g.*, Doc. 29-3 at pp. 31-32 (showing a Dex Media directory cover on one page with a copyright notice and a Dex Media advertisement on the next page with a YPPI Image). Some of the covers of the Dex Media directories themselves include YPPI Images. *E.g.*, Doc. 29-3 at p. 7.

Dex Media is aware that YPPI owns the copyright to the YPPI Images, is aware that it cannot lawfully use the YPPI Images, and intended to conceal its infringement of YPPI's copyrights in the YPPI Images it used. *Id.* at ¶¶ 49-50.

**YP**

On March 31, 2017, YPPI filed suit against YP, case number 8:17-cv-764-T-36JSS, for infringing YPPI's copyrights in many of the YPPI Images (the "764 case"). *Id.* at ¶ 57. YP has repeatedly asserted, in defense of the 764 case, that YP is a successor in interest to a license between YPPI and AT&T (the "YPPI/AT&T License"), which license provides that AT&T may use the YPPI Images covered by that license "provided that a copyright notice is included in any electronic or digital work reflecting on the copyright ownership of both AT&T and Licensor [YPPI] as follows: 'Copyright © 20__ [AT&T] and its licensors. All rights reserved.'" *Id.* at ¶ 58. YPPI denies that YP enjoys any rights under the YPPI/AT&T License. *Id.*

3

Despite the above, YP has distributed print-based and web-based telephone directories and created websites that include the YPPI Images and which do not comply with the YPPI/AT&T Copyright Notice Requirement and which falsely claim that YP is the sole copyright owner. *Id.* at ¶ 62.

From August through December 2015, YP distributed print-based and web-based telephone directories including YPPI Images where the cover and each page of such directory containing one or more of the YPPI Images is marked with a copyright notice stating "© 2015 YP LLC. All rights reserved." *Id.* at ¶ 64. YP similarly distributed false copyright management information on websites created for YP's customers—which use at least one YPPI image—by providing a similar copyright notice on the websites. *Id.* at ¶¶ 81-84. YP did all of the same during the years 2016, 2017, and 2018, changing only the year on its copyright notices. *Id.* at ¶¶ 68, 72, 76.

Examples of YP's DMCA-violating uses are attached to the Amended Complaint as exhibits F-J. *Id.* at ¶¶ 71-84. The examples contained in Exhibit F, G, H, and I generally show (1) the cover of a YP directory containing a YP copyright notice and (2) pages of YP advertisements within the directory containing YPPI Images. *E.g.*, Doc. 29-6 at pp. 2-3 (showing a YP directory cover on one page with a copyright notice and a YP advertisement on the next page containing a YPPI Image). Some examples also show (1) a YP advertisement containing a YPPI Image and (2) a YP copyright notice placed adjacent to that advertisement. *E.g.,* Doc. 29-9 at p. 6. Exhibit J generally shows screenshots of websites containing (1) a YPPI Image and (2) a YP copyright notice at the bottom of the same screen. *E.g.*, Doc. 29-10 at p. 4.

YP is aware that YPPI owns the copyright to the YPPI Images and is also aware that it cannot lawfully use those images in its directories or in websites. *Id.* at ¶ 86. By falsely claiming

a copyright to all the content of the 2015, 2016, 2017, and 2018 directories and websites, YP is concealing from the public and its advertisers its infringement of the YPPI Images. *Id.*

**YP IP**

YP IP is a sister company of YP and possesses the same knowledge as YP regarding YPPI's ownership of the YPPI Images and the copyrights in those YPPI Images. *Id.* at ¶ 91. Since August 1, 2015, YP IP has and continues to distribute false copyright management information on websites created for YP IP's customers, which websites contain one or more of the YPPI Images. *Id.* at ¶ 92. Those websites include copyright notices stating, for example, "© 2018 YP Intellectual Property LLC. All rights reserved." *Id.* at ¶ 93. YP IP is aware that YPPI owns the copyright to the YPPI Images and is also aware that it cannot lawfully use those images in its directories or in websites. *Id.* at ¶ 97. Examples of YP IP's DMCA-violating uses are attached to the Amended Complaint as exhibit K. *Id.* at ¶ 96. The example contained in Exhibit K shows a screenshot of a website containing (1) a YPPI Image and (2) a YP IP copyright notice at the bottom of the same screen. *E.g.*, Doc. 29-11 at p. 4.

By falsely claiming a copyright to all the content of YP IP DMCA-violating websites, YP IP is concealing from the public and its advertisers its infringement of the YPPI Images. *Id.* at ¶ 97.

## II.   LEGAL STANDARD

To survive a motion to dismiss, a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id*. (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient. *Id*. A complaint must

contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id*.

**III.     DISCUSSION**

**A.  Improper Claim Splitting Defense - Counts II and III against YP and YP IP**

Defendants argue that YPPI improperly split its claims against YP and YP IP between this lawsuit and the 764 case. The Court agrees.

The rule against claim splitting, or "spreading claims around in multiple lawsuits," was created to "promote judicial economy and shield parties from vexatious and duplicative litigation while empowering the district court to manage its docket." *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 841-43 (11th Cir. 2017) (internal quotation marks and citations omitted). Although claim splitting "has been analyzed as an aspect of res judicata," claim splitting "is more concerned with the district court's comprehensive management of its docket, whereas res judicata focuses on protecting the finality of judgments." *Id.* at 841 (internal quotation marks and citations omitted).

The rule against claim splitting "requires a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit." *Id.* at 841 (internal quotation marks and citations omitted). Issues of claim splitting may be raised "where a second suit has been filed before the first suit has reached a final judgment." *Id.* at 840, n.3 (internal quotation marks and citations omitted). A district court faced with the issue of claim splitting should apply "a two-factor test whereby the court analyzes (1) whether the case involves the same parties and their privies, and (2) whether separate cases arise from the same transaction or series of transactions." *Id.* at

841-42 (internal quotation marks omitted, citations omitted). Actions arise from the same transaction or series of transactions when they are "based on the same nucleus of operative fact." *Id.*

First, this case involves the same party, and its privy, as the 764 case. YP is a defendant in both this lawsuit and the 764 case. YP IP, though only named as a defendant in this case, is a privy of YP. *See* Doc. 29 at ¶ 91 ("YP IP is a sister company of YP and, upon information and belief, possesses the same knowledge as YP . . . .").

Second, the cases are based on the same nucleus of operative fact. In both actions, YPPI challenges the legality of YP's use of YPPI Images in connection with web-based and print telephone directories and the creation and publication of customer websites. Indeed, many of the YPPI Images that YP is alleged to have infringed in the 764 case are the same YPPI Images with which YP and YP IP are alleged in this lawsuit to have committed DMCA violations. In the 764 case, YPPI attaches a list of all of the names of the YPPI Images that it alleges YP infringed. 8:17-cv-764, Doc. 45, Exh. D. In this case, YPPI provides the names of the YPPI Images shown in the "examples" of YP and YP IP's DMCA-violating uses. Doc. 29, Exhs. F-K. A comparison of the names of the YPPI Images in the two cases reveals that nearly all of the YPPI Images listed in the DMCA-violating examples in this case are the same as the YPPI Images that YP is alleged to have infringed in the 764 case.

YPPI's claim against YP and YP IP for DMCA violations, as stated in this case, was also plainly available to it at the time YPPI filed the 764 case more than a year prior to filing this case. In the 764 case, YPPI attaches exhibits B and C to its amended complaint providing examples of YP's alleged infringing use of the YPPI Images. 8:17-cv-764, Doc. 45 at ¶¶ 24-25. Those examples are screenshots of websites containing YPPI Images. *Id.* Though used to support YPPI's copyright

7

infringement claim against YP, the examples also show YP and YP IP copyright notices placed at the bottom of the web pages in a manner similar to the examples provided in this action to prove DMCA violations. 8:17-cv-764, Doc. 45-2 at pp. 2-3, 12, Doc. 45-3 at p. 3. Tellingly, YPPI does not argue in response to the Motion that it was unaware of YP's or YP IP's alleged DMCA violations at the time of filing the 764 lawsuit.

YPPI contends that this case should not be dismissed for claim splitting because the claims arise from different uses of the YPPI Images. Doc. 51 at p. 16. In the 764 case, YPPI points out, YP's use of the YPPI Images from April 1, 2014 to present are at issue. *Id.* In this case, however, "a more limited range of [use is] at issue—[that] from August 1, 2015 to present." *Id.* Because the cases cover different uses, YPPI argues, the claims are not based on the same nucleus of operative facts.

YPPI's contention is without merit. The Eleventh Circuit dismissed a similar argument in *Vanover*, explaining in pertinent part as follows.

> Vanover takes the position that *Vanover II* involves calls that began in April 2010—earlier than the date alleged in *Vanover I*. . . . [The district court] determined that merely extending the time frame in *Vanover II* to cover an earlier period than was alleged in *Vanover I* does not impact the claim-splitting analysis, since splitting the time frame into two different periods does not create a separate transaction. The district court correctly concluded that all of the alleged wrongs by NCO occurred consecutively in time and prior to filing the compliant (sic) in *Vanover I*; hence, the collection efforts which form the basis of *Vanover I* and *Vanover II* arise from the same transaction or series of transactions. Stated differently, the factual bases for both lawsuits are related in time, origin, and motivation, and they form a convenient trial unit, thereby precluding Vanover from splitting her claims among the lawsuits.

857 F.3d at 842-43.

As in *Vanover*, YPPI's splitting of the time frame into two different periods does not create separate transactions. *Id.* The alleged wrongful use by YP and YP IP in the two cases not only occurred consecutively in time, but also overlap in time. *Id.* Both cases concern alleged wrongs

that occurred between August 2015 to present. Moreover, the alleged wrongs in both actions began prior to the filing of either action. *Id.* As in *Vanover,* YPPI is precluded from splitting its claims among different lawsuits.

YPPI also argues it has not split its claims because Defendants' intent is at issue in this case but not at issue in the 764 case. Doc. 51 at p. 16. That is, YPPI argues, the causes of action are different. But the Eleventh Circuit also addressed a similar argument in *Vanover*, holding that "the addition of separate causes of action . . . does not prevent application of the claim splitting doctrine." 857 F.3d at 843.

YPPI improperly split its claims against YP and YP IP between this case and the 764 case. YPPI's causes of action against YP and YP IP for violations of the DMCA were available to it at the time it filed the 764 case. YPPI's decision to not proceed with its DMCA causes of action at the time it filed the 764 case in March 31, 2017—or its decision to not move to amend its complaint to add those causes of action—was its choice. Allowing YPPI to avoid the consequences of that choice now would "defeat the objective of the claim-splitting doctrine to promote judicial economy and shield parties from vexatious and duplicative litigation while empowering the district court to manage its docket." *Vanover*, 857 F.3d at 843. Therefore, YPPI's claims against YP and YP IP for violations of the DMCA, Counts II and III, will be dismissed.[2]

### B. Res Judicata Defense - Count I against Dex Media

Defendants argue that YPPI's claim against Dex Media is barred by claim preclusion and collateral estoppel due to YPPI's previous litigation against Dex Media concerning Dex Media's

---

[2] The Court's conclusion that this case and the 764 case share a common nucleus of operative fact is not inconsistent with its prior determination that the cases may not be properly consolidated. To be sure, there are differences between the two cases—for example, they both involve additional parties and those parties' separate uses of the YPPI Images— that were relevant to the consolidation analysis but not relevant in the same manner to the analysis here. Overarching the Court's decision to not allow consolidation was the fact that the cases had been filed more than a year apart and are therefore on different litigation timelines.

use of YPPI Images. In support, Defendants attach to their Motion orders of the Delaware Bankruptcy Court concerning YPPI's claims for infringement against Dex Media. Doc. 42-1; Doc. 42-3. Those claims, asserted after the SuperMedia Litigation was initiated, alleged that Dex Media infringed YPPI's copyrights by using YPPI Images (the "Dex Media Litigation"). Doc. 42-3.

When a defendant raises a res judicata[3] defense in a motion, "a court must examine the record to determine whether the issue has been actually or could have been litigated and to ascertain whether there has been a final judgment in the other proceeding." *Starship Enterprises of Atlanta, Inc. v. Coweta Cnty., Ga.*, 708 F.3d 1243, 1253, n.13 (11th Cir. 2013) (quoting *Jones v. Gann*, 703 F.2d 513, 515 (11th Cir.1983)). The requirement that the court examine such record(s) often means, then, that issues of res judicata will be addressed upon a motion for summary judgment. *See Yellowpages Photos, Inc. v. Tata Consultancy Servs. Ltd., Inc.*, No. 8:17-cv-388-T-36TGW, 2018 WL 4604375, at *2-3 (M.D. Fla. Aug. 17, 2018); *Casaburro v. Beery*, No. 6:14-cv-890-Orl-37KRS, 2014 WL 4854291, at *2 (M.D. Fla. Sept. 29, 2014) (citing *Jones*, 708 F.2d at 515).

A district court "may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Such a document attached to a defendant's motion to dismiss must also be one that is referred to in the plaintiff's complaint. *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368-69 (11th Cir. 1997); *Starship Enterprises*, 708 F.3d at 1253, n.13 ("Because Starship did not refer to the Superior Court petition or order in its complaint, the District Court's consideration of

---

[3] The term res judicata comprises both claim preclusion and collateral estoppel. *Empire Fire and Marine Ins. Co. v. J. Transport, Inc.*, 880 F.2d 1291, 1295 (11th Cir. 1989) (citing *Kasper Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530 (5th Cir. 1978)).

those materials automatically converted the motion to dismiss into a motion for summary judgment."); *Baez v. LTD Fin. Servs., L.P.*, 757 Fed. Appx. 842, 845 (11th Cir. 2018) ("If a motion to dismiss requires a district court to look outside the pleadings . . . the motion should be converted into a Rule 56 motion for summary judgment.") (affirming district court opinion converting motion for judgment on the pleadings into motion for summary judgment where motion for judgment on the pleadings attached a court order and a separate motion for summary judgment was pending).

Here, the documents attached to Defendants' Motion are not expressly referenced in the Amended Complaint. Although YPPI's Amended Complaint discusses the SuperMedia Litigation, it does not refer to any facts surrounding the later Dex Media Litigation. Because Defendants' res judicata defense cannot be determined from the face of YPPI's Amended Complaint, the Court cannot properly consider the documents attached to the Motion without converting it into a motion for summary judgment. *Starship Enterprises*, 708 F.3d at 1253, n.13; *Baez*, 757 Fed. Appx. at 845.

The Court declines to convert the Motion into one for summary judgment at this time, when the dispositive motion deadline remains months away. *See* Doc. 44. However, Defendants may reassert their res judicata defense in a motion for summary judgment at the appropriate time.

**C. Failure to State a Claim – Count I against Dex Media**

Defendants also argue that Count I[4] against Dex Media for DMCA violations should be dismissed because YPPI fails to state a claim upon which relief can be granted. To state a claim for DMCA violations under 17 U.S.C. § 1202(a), YPPI must plausibly allege that Dex Media

> knowingly and with the intent to induce, enable, facilitate, or conceal infringement—
> (1) provide[d] copyright management information that is false, or
> (2) distribute[d] or import[ed] for distribution copyright management information that is false.

---

[4] Defendants' Motion also contends that counts II and III should be dismissed for failure to state a claim. However, because the Court has already determined that counts II and III will be dismissed with prejudice based on improper claim splitting, it need not address whether counts II and III also fail to state a claim.

17 U.S.C. § 1202(a)(1)-(2).

   1. *False copyright management information*

Defendants first argue that YPPI fails to state a claim for DMCA violations because YPPI does not plausibly allege that Dex Media conveyed false copyright management information. Defendants base this argument on the placement of the YPPI Images in relation to the copyright notices as shown in the examples attached to the Amended Complaint. Defendants argue that because Dex Media's copyright notices are generic and are not placed on the YPPI Images themselves, they do not convey false copyright management information as a matter of law.

Defendants cite various opinions from district courts around the country in support of their assertion that a defendant's generic copyright notice placed nearby, but not on, a plaintiff's copyrighted work does not convey false copyright management information as a matter of law. Aside from the fact that none of Defendants' cited cases are binding on this Court, only one of the five cited cases discussed the issue in the context of a motion to dismiss. Doc. 42 at pp. 10-16 (*citing Stevens v. Corelogic, Inc.*, 194 F. Supp. 3d 1046 (S.D. Cal. 2016) (motion for summary judgment); *Drauglis v. Kappa Map Grp., LLC*, 128 F. Supp. 3d 46 (D.D.C. 2015) (motions for summary judgment); *Watson v. Kappa Map Grp., LLC*, No. 1:14-cv-100-TWT, 2015 WL 3932425, at *1 (N.D. Ga. June 25, 2015) (motion for summary judgment); *Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.*, 975 F. Supp. 2d 920 (N.D. Ill. 2013) (motion to dismiss); *Schiffer Pub., Ltd. v. Chronicle Books, LLC*, No. Civ.A. 03-4962, 2004 WL 2583817, at *1 (E.D. Pa. Nov. 12, 2004) (bench trial)).

Defendants' argument falls short. The Court is not persuaded that it should consider the placement of the copyright notices upon a motion to dismiss based upon the cases Defendants have cited in their Motion. Moreover, even if the Court could properly consider the placement of Dex

Media's copyright notices in relation to the YPPI Images and determine that the copyright notices did not convey false copyright management information, it is questionable whether the Court could properly adjudicate the entire claim at this stage. The Court only has available for review the *examples* of Dex Media's DMCA violations as provided in the attachments to the Amended Complaint. YPPI does not appear to have provided all of the evidence it has in support of its DMCA violation claim against Dex Media, nor is it required to provide all such evidence at this stage. For these reasons, it would be premature for the Court to judge whether Dex Media's placement of its copyright notices in relation to the YPPI Images convey false copyright management information.

2. *Intent*

Defendants next contend that YPPI fails to plausibly allege that Dex Media had the requisite intent to convey false copyright management information. Rather, Defendants posit, "YPPI's own allegations specifically negate the inference that Defendants harbored some intent to conceal their alleged infringement of [the] YPPI [Images]. That is because YPPI admits that Defendants have always maintained—and still maintain—they are licensed to use [the] YPPI [I]mages . . . ." Doc. 42 at p. 16. With respect to Dex Media, Defendants contend that YPPI's Amended Complaint, specifically paragraphs 22 and 26, "acknowledges that Dex Media believes that it possesses the right to use YPPI's copyrighted images, and, thus, cannot have the requisite" intent. Doc. 42 at p. 17.

Defendants' characterization of YPPI's Amended Complaint is misleading. YPPI's Amended Complaint does not admit that Dex Media believed its use of the YPPI Images was rightful. Rather, YPPI alleges in its Amended Complaint that Dex Media knew—based on an outcome in the SuperMedia Litigation—that YPPI is the owner of the YPPI Images but falsely

13

claimed that Dex Media was the sole copyright owner of the YPPI Images anyway. Doc. 29 at ¶¶ 22-29.

Defendants contend that YPPI's Amended Complaint is misleading and they attempt to set the record straight on what actually happened in the SuperMedia Litigation as opposed to what YPPI alleges happened. Defendants point to an exhibit attached to their Motion, an order of the Delaware Bankruptcy Court in the SuperMedia Litigation, to support their theory that Dex Media did not believe its use constituted infringement and therefore could not have the requisite intent necessary to state a claim for DMCA violations. Doc. 42-2.

Even if the Court considered the Delaware Bankruptcy Court's order attached to Defendants' Motion, without converting the Motion into one for summary judgment,[5] Defendants' argument would fail. Defendants' discussion of intent focuses on whether Dex Media believed it could lawfully *use* the images—not whether Dex Media intended to convey false copyright information, regardless of whether it believed it could use the images in the first instance. The attached order from the Delaware Bankruptcy Court does not discuss Dex Media's intent in the context of the DMCA (nor does it appear to discuss Dex Media's intent in any context).

YPPI has set forth enough facts in its Amended Complaint, accepted as true, to plausibly allege that Dex Media "knowingly and with intent" provided false copyright management information. YPPI does so by setting forth a theory of why it believes Dex Media had the requisite intent. YPPI therefore avoids Defendants' Motion on Count I.

Accordingly, it is hereby **ORDERED**:

1. Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 42) is **GRANTED IN PART AND DENIED IN PART.**

---

[5] YPPI specifically discusses the SuperMedia Litigation in its Amended Complaint.

2. Counts II and III of Plaintiff's Amended Complaint are **DISMISSED, with prejudice,** because Plaintiff improperly split its claims against YP and YP IP between this case and the earlier-filed case, *Yellowpages Photos, Inc. v. YP, LLC*, No. 8:17-cv-764-T-36JSS.

3. In all other respects, Defendants' Motion to Dismiss Plaintiff's Amended Complaint is **DENIED.**

**DONE AND ORDERED** in Tampa, Florida on May 24, 2019.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any